UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
RAFAEL ANTONIO GARAVITO-GARCIA,

    Petitioner,

    -v-

UNITED STATES OF AMERICA,

    Respondent.
------------------------------------x

21 Cv. 1862 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

    In July 2015, the Court sentenced petitioner Rafael Antonio Garavito-Garcia, a then-68-year-old defendant who had recently suffered a stroke, to 300 months' imprisonment after he was convicted of, among other things, conspiracy to acquire and transfer anti-aircraft missiles in violation of 18 U.S.C. §§ 2332g(a)(1), (b), (c), and 3238. The Court had no choice; it was bound by a statutory mandatory minimum. With the First Step Act, however, Congress afforded courts the discretion to reduce a term of imprisonment where, among other things, there are extraordinary and compelling reasons to do so. Garavito-Garcia's advanced age and deteriorating health condition constitute such a reason. For that reason, and for those set forth below, the Court grants Garavito-Garcia's motion for a sentence reduction pursuant to 18

1

U.S.C. § 3582(c)(1)(A) and hereby reduces his sentence to a term of 180 months' imprisonment.

I. Background

In the early 2010s, Garavito-Garcia participated in a conspiracy to traffic cocaine to and through Guinea Bissau on behalf of individuals whom he understood to be representatives of the Fuerzas Armadas Revolucionarias de Colombia (the "FARC"), a guerilla warfare group committed to overthrowing the Colombian government. See Gov. Mem., Dkt. No. 15, at 1. As he worked to advance the cocaine deal, Garavito-Garcia also spearheaded efforts to forge an agreement with Guinea Bissau's corrupt military leadership to help the FARC obtain an array of military weaponry, including surface-to-air missiles. Id. The conspiracy turned out to be a sting operation; no drugs or weapons were imported into the United States. Id. at 1-2.

Garavito-Garcia was arrested in Columbia in April 2013. Id. at 3. While awaiting extradition to the United States, Garavito-Garcia suffered a stroke that left him partially incapacitated. See Def. Mem., Dkt. No. 14, at 1. Nonetheless, he was extradited to the United States in July 2014 and was found fit to stand trial. Id. at 2. He was convicted at a jury trial in March 2015 of conspiracy to commit narco-terrorism, in violation of 21 U.S.C. § 960(a); conspiracy to import cocaine into the United States, in violation of 21 U.S.C. § 963; conspiracy to provide material

support to a foreign terrorist organization, in violation of 18 U.S.C. §§ 2339B(a)(1), (d)(1), and 3238; and conspiracy to acquire and transfer anti-aircraft missiles, in violation of 18 U.S.C. §§ 2332g(a)(1), (b), (c), and 3238. Gov. Mem. at 3.

The anti-aircraft charge carried a mandatory minimum of 25 years, 18 U.S.C. § 2332g(c)(1), while the terms of the extradition precluded a life sentence, Gov. Mem. at 3. The Court sentenced him to 25 years, as the mandatory minimum required, but protested its lack of discretion in doing so. The Court observed that the case posed some tricky sentencing issues. On the one hand, Garavito-Garcia "was ready, willing, at times even eager, to participate in crimes of the greatest seriousness and magnitude." Transcript dated July 20, 2015 ("Tr.") at 19. On the other hand, it was a "concocted scheme" that "involved a defendant who did not appear to have previously had much interest in criminal activity affecting the United States," who had "very serious health problems," and who was "extradited by a government that said they did not want a life imprisonment term." Id. at 19-20. In light of these competing factors, the Court indicated that it had "no idea" what sentence it would have imposed if it had discretion, but that in "virtually no scenario that I can think of would it have been more than 25 years given the defendant's age and health and the terms under which he was extradited." Id. at 20-21.

3

In July 2019, Garavito-Garcia, who is incarcerated in FMC Rochester in Minnesota, sought compassionate release through the Bureau of Prisons ("BOP"), citing the stroke he had suffered in Colombian prison that left him incapable of self-care. Dkt. No. 14-1 at 21. He stated that, if released, he would return to his family in Colombia. Id. In August 2019, the Warden approved his request for pursuit of compassionate release, finding that Garavito-Garcia was eligible because he suffered from a "debilitated medical condition," as that term is defined in the relevant BOP policy. See Dkt. No. 14-1 at 23.

Specifically, the BOP has issued a program statement that elaborates on its procedures and criteria for deciding whether to file a motion for reduction in sentence on a prisoner's behalf. See Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (2019), https://www.bop.gov/policy/ progstat/5050_050_EN.pdf (last visited Jun. 2, 2021). As relevant here, section 3 of Program Statement 5050.50 describes the circumstances that the BOP will consider when determining whether to file a compassionate release motion for "Requests Based on Medical Circumstances." It states that such circumstances "may include" a prisoner's "Debilitated Medical Condition." It defines a "Debilitated Medical Condition" to mean that the defendant is "[c]ompletely disabled, meaning the

4

inmate cannot carry on any self-care and is totally confined to a bed or chair," or is "[c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." Id. at 6.

On January 6, 2020, pursuant to BOP policy, the Warden forwarded the request to the Office of General Counsel. See Dkt. No. 14-1 at 23. On February 25, 2021, the BOP overruled the Warden and denied release. Dkt. No. 14-1 at 25. The BOP agreed with the Warden that Garavito-Garcia was suffering from a "debilitated medical condition." Specifically, it found that, as a result of his stroke, Garavito-Garcia is confined to his bed or wheelchair for more than half of his waking hours. It also found that, although Garavito-Garcia "remains independent with toileting, transferring, grooming, feeding, using the telephone and computer, managing his commissary list, planning and preparing meal, and performing light housekeeping tasks," he "receives assistance with entering and exiting the [bath]tub, requires moderate assistance with dressing and total care with laundry." Nevertheless, the Office of General Counsel denied Garavito-Garcia's request because, "in light of the nature and circumstances of [his] offense and his unresolved deportation detainer, his release at this time would minimize the severity of his offense and pose a danger to the community."

In August 2020, while his motion for compassionate release was still pending before the Office of General Counsel, Garavito-Garcia filed a pro se motion styled as a petition for habeas corpus in the District of Minnesota. Dkt. Nos. 2, 3. On February 26, 2021, the District of Minnesota transferred the portion of the motion seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(a) to this Court, consistent with the principle that motions for compassionate release are to be decided by the sentencing court. See Dkt. No. 7. On March 5, 2021, the Court appointed counsel to supplement, as needed, Garavito-Garcia's motion. Dkt. No. 11. The Court heard oral argument on May 18, 2021. The motion is now ripe for decision.

II. Legal Standard

Garavito-Garcia brings his motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The now-familiar standard requires the Court to "ask four questions: (1) has the defendant complied with the administrative exhaustion requirement, (2) has the defendant shown extraordinary and compelling reasons warranting a sentence reduction, (3) are the 18 U.S.C. § 3553(a) sentencing factors consistent with a lesser sentence than that previously imposed, and (4) is there a particular sentence reduction consistent with the § 3553(a) factors that is also warranted by extraordinary and compelling reasons." United States v. Garcia, --- F. Supp. 3d ---, 2020 WL 7212962, at *2 (S.D.N.Y. Dec. 8, 2020).

III. Discussion

A. Administrative Exhaustion

Garavito-Garcia's request for compassionate release was denied by the BOP on February 25, 2021. The exhaustion requirement is therefore satisfied.

B. Extraordinary and Compelling Reasons

Garavito-Garcia argues that his advanced age and deteriorating health amount to an extraordinary and compelling reason for a sentence reduction. He suffers from a host of medical conditions, which have, according to the defense, "left him effectively dependent on others to care for him" because he is "in a wheelchair, cannot swallow whole foods, and needs assistance with almost all of his daily activities." Reply, Dkt. No. 16, at 1. Accordingly, Garavito-Garcia asks for a sentence reduction.

This motion presents an important question: whether a court has authority to grant a sentence reduction under § 3582(c)(1)(A) based on extraordinary and compelling reasons even where those reasons would not have enabled the court to impose a lower sentence at the time of the initial sentencing. This question arises because Garavito-Garcia was sentenced to a mandatory minimum sentence of 25 years' imprisonment. In a case without mandatory minimums, the court's initial sentence would incorporate all relevant sentencing factors, such as the history and characteristics of the defendant, see 18 U.S.C. § 3553(a)(1), especially if those factors gave rise

to a compelling reason for a lower sentence. In those circumstances, it might make little sense for the court to grant a further sentence reduction under § 3582(c)(1)(A) based on mitigating factors that were already incorporated in the initial sentence. Put simply, such mitigating factors would not ordinarily constitute a reason, much less a compelling one, to reduce an already shortened sentence.

Consider, for example, an elderly and ill defendant who was convicted of a low-level crime and sentenced at the height of the coronavirus pandemic. In determining whether to impose an incarceratory sentence, a court would consider, among other things, the defendant's age, health, and risk of developing a severe case of COVID-19 as a result of his incarceration. Even after considering those factors, however, a court might still conclude that an incarceratory sentence would be appropriate. If so, and barring any unforeseen changes from the time of sentencing, a subsequent motion for a sentence reduction based on the defendant's health and/or the coronavirus pandemic would usually be unsuccessful. The sentencing court would have already taken these circumstances into account in crafting the initial sentence. Nothing will have changed.

Mandatory minimums, however, alter this analysis because the sentencing court may not have been authorized to account for such circumstances in crafting an initial sentence. Thus, as the

Government properly concedes, "the Court has authority pursuant to 18 U.S.C. § 3582(c)(1)(A) to reduce a defendant's sentence below the sentence required by a statutory mandatory minimum." Gov. Supp. Mem., Dkt. No. 17, at 1. Indeed, courts routinely grant sentence reductions to defendants sentenced under mandatory minimums. See, e.g., United States v. Somerville, No. 2:12-cr-225-NR, 463 F. Supp. 3d 585, 600-02 (W.D. Pa. May 29, 2020) ("In the context of a compassionate-release motion . . . the court is permitted to consider whether the § 3553(a) factors warrant a lower sentence, even if the original sentencing judge could not."). And the Second Circuit raised no objection to the prospect of a sentence reduction for a defendant sentenced to a mandatory minimum. See United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020). In light of the Government's concession and the preceding case law, the Court concludes that it has authority to grant a sentence reduction under § 3582(c)(1)(A) based on extraordinary and compelling reasons even where those reasons would not have enabled the court to impose a lower sentence at the time of the initial sentencing.[1]

---

[1] There are, to be sure, broad and narrow versions of this holding. The broad version would hold that the compassionate release statute authorizes the Court to reduce a sentence below the mandatory minimum sentence regardless of when the extraordinary and compelling reasons for the reduction first arises. The narrow version would hold that the compassionate release statute authorizes the Court to reduce a sentence below the mandatory minimum sentence only where the extraordinary and compelling reasons for the reduction arises after the sentencing. There are powerful reasons to reject the narrower version and to

9

Of course, that extraordinary and compelling reasons could in theory justify a sentence below the mandatory minimum sentence does not mean that such reasons are present in this case. Indeed, the Government maintains that, "while the Court has the authority to reduce Mr. Garavito-Garcia's sentence below the statutory mandatory minimum of 25 years," he has not "demonstrated extraordinary and compelling reasons warranting a reduction in sentence."

The Court disagrees with the Government and finds that there are extraordinary and compelling reasons for a sentence reduction in this case. As Garavito-Garcia argues, his age and debilitating medical condition give rise to such a reason. These conditions have "left him effectively dependent on others to care for him" because he is "in a wheelchair, cannot swallow whole foods, and needs assistance with almost all of his daily activities." Reply

---

adopt the broader version of this rule. Under the narrow version, a defendant's eligibility for a sentence reduction would arbitrarily turn on the timing of his extraordinary and compelling reasons. For example, if Garavito-Garcia suffered a stroke the day after sentencing, he would be eligible for a sentence reduction; but if he suffered the same stroke the day before sentencing, he would not be eligible for a sentence reduction. Regardless whether the stroke occurred before or after sentencing, however, the mandatory minimum would have precluded the Court from imposing a sentence beneath the mandatory minimum. But the Court need not resolve the issue in this case because Garavito-Garcia's health condition has apparently worsened in the years following his sentencing. See Dkt. No. 14-1 at 26 (explaining that the results of a computed topography scan from May 2019 suggested "cognitive decline").

at 1. Although the policy statements and application notes are no longer applicable post-<u>Brooker</u>, they are instructive here. Application Note 1(A)(ii) provides that there is an extraordinary and compelling reason for a sentence reduction where the defendant is:

> suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1 to U.S.S.G. § 1B1.13. This application note sets forward a standard similar to what the BOP itself employs in evaluating compassionate release requests based on a "debilitated medical condition." There is no real dispute that Garavito-Garcia meets that standard. The Warden -- who is most familiar with the welfare of his inmates -- found that Garavito-Garcia suffered from a debilitated medication condition, and the Office of the General Counsel agreed. That the BOP recognized that Garavito-Garcia suffers from a debilitated medical condition is relevant to the question whether there are extraordinary and compelling reasons for a sentence reduction. Because Garavito-Garcia is suffering from a serious and debilitated medical condition, the Court concludes that there are extraordinary and compelling reasons for a sentence reduction in this case.

C. <u>Section 3553(a) Factors</u>

Having found extraordinary and compelling reasons for a sentence reduction, the Court turns to the § 3553(a) factors. In particular, the Court must consider whether a sentence of less than 300 months' imprisonment would be consistent with the sentencing factors articulated in § 3553(a).

"[T]he nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), plainly warrant a very substantial term of imprisonment. As the Court previously observed at the time of sentencing, these were "crimes of the greatest seriousness and magnitude." Tr. at 19. On the other hand, for reasons already stated, "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), including especially his advanced age and his deteriorating health, strongly contraindicate a sentence of 300 months' imprisonment -- indeed, such a sentence is effectively a life-sentence for Garavito-Garcia who, at 74 years old, would likely die behind bars if this motion were denied. Moreover, given Garavito-Garcia's poor health, incarceration is no longer necessary "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

For these reasons, the Court concludes that a sentence of less than 300 months' imprisonment is consistent with the § 3553(a) factors.

D. <u>Nexus</u>

The final question presented by a sentence reduction motion is the question of nexus -- whether a particular sentence reduction is both warranted by extraordinary and compelling reasons and consistent with the § 3553(a) factors. This requirement comes into focus when the extraordinary and compelling reasons for a sentence reduction are time-sensitive (e.g., requests for compassionate release relating to the coronavirus pandemic), requiring the Court to determine whether the § 3553(a) factors permit immediate release. Here, however, none of the extraordinary and compelling circumstances is time-bound, so this requirement is easily met.

Finally, how much of a reduction these circumstances warrant is, as sentencing always should be, a holistic inquiry, not subject to any prescribed calculation. Weighing all the evidence and arguments offered by both sides, the Court concludes that the extraordinary and compelling circumstances in this case warrant a reduction of sentence to a term of 180 months, i.e., 15 years. The Court also concludes that such a sentence is consistent with the § 3553(a) factors; in other words, if the Court had been able to make an individualized sentencing determination in 2015, but with full foresight of Garavito-Garcia's deteriorating health, the Court would have found that a sentence of 180 months' imprisonment was sufficient to comply with the purposes of criminal sentencing.

IV. Conclusion

For the foregoing reasons, Garavito-Garcia's motion for a sentence reduction is granted, and his sentence is modified to reduce the term of imprisonment from 300 months to 180 months. All other aspects of his sentence remain in full force and effect.

SO ORDERED.

Dated: New York, NY
June 21, 2021

_____
JED S. RAKOFF, U.S.D.J.